ELBRIDGE LINCOLN *versus* DANIEL EDGECOMB, JR.

Where a line is described in the deed as running from a known bound, a specified number of rods, to a stake, in the absence of all satisfactory proof of the position of that stake in the earth, the extent of the line is to be ascertained, by measuring from the known boundary, the number of rods named in the deed.

Where the same grantor conveys to two persons, to each one a lot of land, limiting each to a certain number of rods, from opposite known bounds, running in a direction to meet, if extended far enough, and by admeasurement the lots do not adjoin, when it appears from the same deeds, that it was the intention that they should; a rule should be applied, which will divide the surplus, over the admeasurement named in the deeds, ascertained to exist, by actual admeasurement upon the earth, between the grantees, in proportion to the length of their respective lines, as stated in their deeds.

No COPY of the deeds, or of the plan, came into the hands of the Reporter, but the facts and the material parts of the deeds can be understood from the full statement thereof in the opinion of the Court.

The exceptions state, that at the trial before WHITMAN C. J. the presiding Judge permitted the deed of Hamilton to Snow to go to the jury without any explanation, containing a reference to an old bond Seelly had given to Snow, and to which the defendant was not a party, and had no knowledge of the existence of the same, notwithstanding the defendant objected to that portion of said deed. And Benjamin Thompson, one of demandant's witnesses, was permitted to testify, though the defendant objected, to a survey had by Snow, when he held Seelly's bond, and to Snow's giving his notes to Seelly in 1830, for said land now claimed by plaintiff, when no proper conveyance of which the defendant was bound to take notice, was actually made to Snow till September 14, 1835.

The presiding Judge instructed the jury, that the surveyor, Merrill, had made it 49 rods from the fence or dotted line, on the range line to the brook, and if the defendant commenced at the black line, as laid down on the plan, he would get his 47 rods according to his deed, and that would be his boundary in the absence of any permanent monument, existing or erect-

ed by the parties or those under whom they claim, and that they would find upon the whole facts, whether the red line or the black line was the true line.

The jury found the black line, to be the true line.

The defendant filed exceptions to the rulings and instructions of the Judge.

*Sawyer* and *Gilbert*, for the defendant, contended : —

1. As the tenant was in possession, the demandant must prove a better title in himself, or he cannot prevail. The instruction of the Judge, therefore, was erroneous, because the effect of it was, that if the number of rods, named in the tenant's deed, would not include the premises in controversy, that the demandant might recover, although he showed no title.

2. The instruction conflicted with the well known principle of law, that where there is a variance between the bound named in the deed, and the length of line, that the bound is to govern. Long continued occupation is enough to warrant the jury in inferring, that the bound was in accordance with the occupation. 5 Greenl. 482 ; 9 Pick. 519 ; 12 Pick. 532.

3. The Judge erred, in admitting proof of the acts of Snow, while a stranger to the title. Merely having a promise of a deed, gave him no interest in the land.

*Mitchell* argued for the demandant, contending that the whole question was rightly left to the jury, with appropriate instructions.

The opinion of the Court was drawn up by

SHEPLEY J. — The demandant by this writ of entry, seeks to recover a small tract of land between a black line on the northerly side and a red dotted line on the southerly side, as delineated on a plan made by Abel Merrill. The tenant disclaimed all title to land lying southerly of the red line. Both parties derive their respective titles from Joseph B. Seelly, who first conveyed to the tenant and Martin Edgecomb, on July 16, 1835, by a deed recorded July 18, 1835, a tract of land

" beginning at the brook and bridge on the road leading from school house No. 3, in the town of Topsham, to the little river stream, so called, thence running south 61° east, by said road 81 1-2 rods to a maple tree, thence south 71° west, 76 rods to a stake on the 50 acre range line, thence north 19° west, by said line 47 rods to a brook, thence north-easterly by said brook to the first mentioned bounds, the above described parcel of land to contain twenty-four acres more or less." It is admitted that Martin Edgecomb soon afterward conveyed his interest in that tract of land to the tenant. The maple stump now standing at the easterly end of the red line is apparently the same named in the deed, Seelly to Edward Hamilton, from whom the demandant derives his title, and it appears to have been acknowledged by the present and by former owners as the true monument referred to in their deeds as a boundary of the respective lots. The only difficulty appears to have been to ascertain the monument or bound at the westerly end of the line between the lands of the parties.

It was described in the conveyance of the land owned by the tenant, as " a stake standing on the 50 acre range line." The position of the range line, so called, of the 50 acres, does not appear to have been disputed. That was probably made by Benjamin Thompson, during a survey in the year 1830, of 50 acres from the easterly end of lot No. 34, agreed to be conveyed by Seelly to Simeon Snow. The position of the stake does not appear to have been satisfactorily ascertained. The line from the stump to the stake is stated in the deed to be south 71° west. The plan presented by the surveyor is so imperfect, that the courses of the black and red lines are not stated upon it. The black line is parallel to the demandant's southerly line, which is stated in his deed to be upon the same course south 71° west, but the actual course of that line as measured upon the earth is not stated. The testimony presented does not afford any other means for ascertaining the position of that stake, being the south-westerly corner bound of the land owned by the tenant, than by reference to the length of his line extending northerly from it to the brook,

which in his deed is stated to be 47 rods. By that admeasurement, according to the survey of Merrill, the stake would be ascertained to have stood northerly of the black line, to which the demandant claims.

Upon this aspect of the case, the jury were instructed, " if the defendant commenced at the black line, as laid down on the plan, he would get his 47 rods, according to his deed, and that would be his boundary in the absence of any permanent monument, existing or erected by the parties, or those under whom they claimed ; and that they would find upon the whole facts, whether the red line or the black line was the true line." It will be perceived, that no notice is taken in these instructions of the demandant's title to the land claimed by him, or of its legal effect, upon his right to recover it.

The tenant had been in possession of it, for several years before the commencement of the action. The demandant must establish a title superior to that, before he can recover it. He must recover upon the strength of his own title, and not by reason of the defective title of the tenant. His title commences by a conveyance made on July 17th, and recorded on July 20th, 1835, by Joseph B. Seelly to Edward Hamilton. In that deed a maple stump is named as standing at the easterly end of the tract, claimed as a boundary. The line of boundary extends from it, " south 71° west, 76 rods to the range line, thence, south 19° east, 42 rods." There is no monument named as standing in the range line. The only means afforded to ascertain the point of its intersection is the length of the line, exhibiting the widths of the demandant's lot at the westerly end, which is stated in his deed to be 42 rods.

Edward Hamilton conveyed the land to Simeon Snow on September 14, 1835, by the following description : " a piece of land situated in said Topsham, being lot numbered 34 in the north-west corner of said town, and the south-easterly part of said lot number 34, and being 50 acres of the above named lot." There is nothing in this description, from which the

width of the lot or the point of intersection of its northerly line with the range line at the westerly end of it can be ascertained.

Simeon Snow conveyed the same lot to the demandant on November 1, 1839, by the following description: "Beginning at a stake marked as a corner on the Bowdoin line between Martin Hall and Daniel Thompson, thence running south, 71° west, 208 rods, thence, 19° west, 42 rods to a stake, thence north 71° east, 156½ rods to Bowdoin line, thence on said Bowdoin line 70 rods to the bounds first mentioned, containing 50 acres, it being a part of lot numbered 34 on the plan of Topsham." The testimony shows, that the southerly line of the lot on a course south 71° west, and terminating at a beech tree on the range line, was undisputed. By that the southwesterly corner of the demandant's lot was determined. The line extending across the westerly end of it is described in his deed as terminating at a stake standing 42 rods from that corner. The stake, named in the deed from Seelly to the tenant, was, doubtless, the same referred to in the deed from Snow to the demandant. In the absence of all satisfactory proof of the position of that stake in the earth, the length of the demandant's westerly line and the north-west corner of his lot can be ascertained only by the distance of 42 rods, admeasured from his south-westerly corner at the beech tree. This will be the result by the application of the same rule, by which the tenant's westerly line was ascertained, and the south-west corner of his lot determined. And the demandant would fail to establish any title to the part claimed between the red and black lines.

By the application of the same rule to determine the bounds limiting the title of each party, their lands would not adjoin, while it appears to have been the intention of the original owner of both lots, that they should; and to carry that intention into effect, a rule should be applied, which will divide the surplus over the admeasurement named in the deeds, as ascertained to exist by actual admeasurement upon the earth, be-

tween the parties in proportion to the length of their respective lines as stated in their deeds.  *Brown* v. *Gay*, 3 Greenl 126 ; *Wyatt* v. *Savage*, 2 Fairf. 429.  This rule would not however become applicable, if the northerly line of lot No. 34 should be satisfactorily established by testimony.  In such case, as the conveyance to the tenant does not appear to have included any part of it, and that to the demandant is limited by it, the true northerly line of lot No. 34, would determine the width of the demandant's lot at the westerly end upon the range line.

<div align="center">

*Exceptions sustained, and new trial granted.*