## DRISCOLL *v.* GREEN.

When there are two descriptions in a deed, equally explicit and unambiguous, that description must control which best expresses the intention of the parties, as manifested by the whole instrument.

TRESPASS, *quare clausum.* Facts agreed. The plaintiff and defendant are owners of adjoining lots of land, situated on Chapel street, in Concord. Both parties claim under conveyances from Stephen M. Vail,—the plaintiff, by deed dated May 3, 1864, and the defendant, by deed dated April 22, 1867. The boundary line between the lots is in dispute, and the question of the construction of the plaintiff's deed is reserved.

*A. F. L. Norris,* for the plaintiff.

*Dana,* for the defendant.

CLARK, J. The description in the deed from Vail to the plaintiff is as follows: "All that certain lot of land situate in said city of Concord, on the north side of Chapel street, bounded southerly by Chapel street, fifty feet; westerly by land of said Vail and late Samuel Frye, ninety feet; northerly by land of the late Samuel Frye, fifty feet; and easterly by land of said Vail, about ninety-eight feet, with the buildings thereon,—intending to include only the land on which said buildings are situated, and the yard enclosed within the fence as now built." And the question raised is, whether the particular description of the premises conveyed is controlled and limited by the words " intending to include only the land on which said buildings are situated, and the yard enclosed within the fence as now built." Omitting this clause from the description,

there is no ambiguity or uncertainty as to the extent of the prem-ises conveyed. At the time of the conveyance there was a perma-nent fence, with stone posts, on the westerly line of the lot con-veyed to the plaintiff, and this line was a straight line, at a right angle with Chapel street. The lot is described as bounded " south-erly by Chapel street, fifty feet." By this description, the grantor must have understood he was conveying, and the plaintiff under-stood he was receiving, a lot of land bounded on Chapel street, fifty feet in width ; and the westerly boundary on the street being fixed and permanent, the easterly boundary, being fifty feet easterly on the line of the street, is as definite and certain a boundary as a stone post, a tree, or any other boundary would have been. *Lin-coln* v. *Edgecomb*, 28 Me. 275. So as to the northerly line of the lot : it extends from the permanent fence on the west side of the lot, fifty feet easterly, on land of Frye. So that on the southerly, westerly, and northerly sides of the lot the boundaries are fixed and the exact distance defined. The easterly boundary is described as " easterly by land of said Vail, about ninety-eight feet." By the established rules of construction, this line is a straight line from the north-east to the south-east corner of the lot, and the words " about ninety-eight feet," showing that the exact distance is not intended to be given in the case of this line, indicate that the grantor intended to be bound by the exact distance stated in the case of the other lines. By this description, therefore, the lot con-veyed is fifty feet in width on Chapel street, and, being bounded on the street, all the grantor's title in the land to the centre of the street passed to the plaintiff, subject to the right of the public in the street.

The only line in dispute is the easterly line of the plaintiff's lot, and the northerly end of this line is not in dispute. The defend-ant, owning the lot on Chapel street adjoining the plaintiff's east-erly line by a conveyance from Vail subsequent to his deed to the plaintiff, claims a strip of land two feet and nine inches in width on Chapel street, and running to a point at the northerly end of the lot.

At the date of the deed, in May, 1864, the buildings on the lot conveyed to the plaintiff were, as now, a dwelling-house, L, wood-house, and stable, connected, and extending from a line eighteen feet and five inches northerly of the northerly line of Chapel street to the north end of the lot, at the north-westerly corner of the sta-ble. The easterly side of the main body of the house and L is on a straight line, parallel with and distant from the westerly line of the lot forty-seven feet and three inches. The stable projects out easterly beyond the L eleven inches, and the easterly side is on a straight line eleven inches further east than the sides of the house and L, and is parallel with the westerly line of the lot. The wood-shed between the L and stable runs obliquely from a line with the L to a line with the stable. At the time of the conveyance there

was no fence between the lot conveyed to the plaintiff and the lot now owned by the defendant, excepting a fence twelve feet and two inches in length extending southerly, on a line with the easterly side of the house and L, from the south-easterly corner of the house to a point six feet and three inches northerly of the north line of Chapel street. There was also a fence extending westerly from that point to the westerly side of the lot, parallel with, and six feet and three inches northerly of, the north line of Chapel street, leaving a space six feet and three inches in width between the northerly line of the street and the fence, which was used as a sidewalk. On the northerly end of the lot the fence extended from the north-westerly corner of the lot to the north-westerly corner of the stable, there being no fence between the northerly end of the stable and the Frye land. Therefore, if the clause "intending to include only the land on which the buildings are situated and the yard enclosed within the fence as now built," following the particular description of the premises in the deed, is to have the effect to control and limit the particular description, and is to be construed literally, then it excludes from the conveyance to the plaintiff not only the strip of land two feet and nine inches in width on Chapel street, and running to a point at the northerly end, which the defendant claims, but it also excludes a strip of land at the northerly end of the stable, and also the space used as a sidewalk, six feet and three inches in width, between the fence and the northerly line of Chapel street; and the title to the two last-mentioned pieces still remains in the grantor, Vail, by virtue of this limitation. We do not think this is the true construction of the deed, or that such was the intention and understanding of the parties when the deed was executed.

A deed is to be construed according to the intention of the parties as manifested by the entire instrument, although such construction may not comport with the language of a particular part of it. *Allen* v. *Holton*, 20 Pick. 458, 463; *Worthington* v. *Hylyer*, 4 Mass. 196; *White* v. *Gay*, 9 N. H. 126; *Johnson* v. *Simpson*, 36 N. H. 91; *Lane* v. *Thompson*, 43 N. H. 320, 324; *Richardson* v. *Palmer*, 38 N. H. 212. Regarding the two descriptions as equally explicit and unambiguous, being inconsistent with each other, that description must control which best expresses the intention of the parties as manifested by the whole instrument. By the first description, the premises conveyed are bounded southerly by Chapel street. By the second description, limiting the premises to the land on which the buildings are situated and the yard enclosed within the fence, the plaintiff's lot, instead of extending to Chapel street, is separated from it by a strip of land six feet and three inches in width, lying between the fence on the southerly side of the yard and the northerly line of Chapel street. This description excludes the plaintiff's lot and buildings entirely from the street, without even a right of passage way to it. Such could not have been the

intention of the parties, and this description is manifestly erroneous as to the southerly line of the lot. It is equally incorrect when applied to the northerly line, as it leaves a strip of land between the northerly end of the stable and the Frye land which is included in the first description, and which the grantor evidently intended to convey. The second description, therefore, being clearly erroneous as to the northerly and southerly lines of the lot, ought not to control the first description as to the easterly line. If there is an explicit and unambiguous grant of a thing, any exception or reservation which is manifestly contradictory will be rejected. *Rutherford* v. *Tracy*, 48 Mo. 325; *S. C.*, 8 Am. Rep. 104; *Herrick* v. *Hopkins*, 23 Me. 217; *Pike* v. *Munroe*, 36 Me. 309; *Ela* v. *Card*, 2 N. H. 175.

But the phrase "the land on which said buildings are situated" is not entirely certain; and doubtful words and provisions are to be taken most strongly against the grantor. The defendant claims that this language limits the plaintiff's line to the side of the buildings. If the position of the defendant is correct, then the eaves of the plaintiff's buildings project over the defendant's land, and the foundation extends under it. The case finds that the eaves of the house, L, and wood-house have always projected over and extended easterly of the main line or sills of the easterly side of the buildings about fifteen inches, and the eaves of the stable about nine inches; and that the underpinning and foundation walls extend in the same direction, partly above and partly below the ground, irregularly, from three to twenty-nine inches, covering a large part of the land in dispute.

We do not think the parties intended to limit the plaintiff's easterly line in the manner contended for by the defendant. Such a construction would not only make the plaintiff's easterly line an irregular line where the deed calls for a straight line, but it would make the width of his lot forty-seven feet and three inches on Chapel street when the deed calls for fifty feet. Our conclusion is, that the particular description, being explicit and unambiguous, must govern in the construction of the deed, and that the plaintiff has the title to the strip of land in controversy; and, according to the agreement of the parties, there must be

*Judgment for the plaintiff.*

BINGHAM, J., did not sit: the others concurred.