Frank S. McCullough, J.
This is an action brought pursuant to section 473 of the Civil Practice Act for a declaratory judgment determining the rights of the parties under an agreement *304 dated October 25,1956, between Windmill Farm Homes, Inc., one of the defendants and the Town of North Castle, the plaintiff. The plaintiff seeks a determination with respect to the agreement in connection with the operation of a sand and gravel pit and the excavation and removal therefrom of sand and gravel and to have the court declare that the defendants, by reason of said agreement, have abandoned any claim to an alleged nonconforming use or right to excavate, remove and sell sand and gravel from said sand pit. Finally, the complaint demands that the court declare that the agreement is binding and enforcible and that the court direct the defendants to desist from the sand and gravel operations and to restrain and enjoin them from continuing the operation of said sand and gravel pit.
The individual defendants, Tobin and Weis on have been the owners since 1954 of an 80-acre tract of land in the Town of North Castle. It appears that the defendants had a nonconforming use in respect to said premises which allowed them to use and operate the subject premises as a gravel pit. Under the zoning ordinance in effect, the premises are situated in a residential zone. In 1956, protests were made against the continued use of the gravel pit. As a result of these protests an agreement was negotiated between the corporate defendant and the town. The corporate defendant executed the agreement on December 15, 1956, but no execution on behalf of the town took place until the Supervisor of the Town of North Castle signed the agreement just prior to July 25, 1957. No notice was ever given to the defendants that the agreement was signed on behalf of the town and no copy was ever furnished by the town to the defendants.
Under the agreement, the defendant Windmill Farm Homes, Inc., was deemed to have abandoned any claim or right to a nonconforming use upon the completion of a certain lake and residential area, or on October 25, 1960, whichever was the earlier date, unless extended as provided in the agreement. No such extension has been granted. The individual defendants were not parties to the agreement. The sand and gravel pit is still in operation despite the passage of the cut-off date of October 25,1960.
It is the contention of the defendants that the lawful nonconforming use in respect to the premises took precedence over the provisions of the ordinance and the use was therefore a lawful use. The nonconforming use was clearly established by the testimony.
The defendants contend that the agreement is nudum pactum without consideration and is therefore unenforcible and that in *305 any event under the terms of the agreement the nonconforming use should be permitted until the lake is completed.
It is not difficult for this court to hold that the agreement was binding on the corporate defendant which apparently from all that appears in the testimony, was not the owner. The fact that the individuals were the majority stockholders and for all purposes in control of the activities of the corporation is not sufficient under the circumstances to justify piercing the corporate veil.
The real issue for determination is whether in fact a nonconforming use can be terminated by legislative action in the nature of a local ordinance. As Mr. Justice Holmes in Pennsylvania Coal Co. v. Mahon (260 U. S. 393, 415-416) calls attention to, ‘ ‘ The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. * * * We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constituted way of paying for the change.”
Until the case of Town of Hempstead v. Goldblatt (9 N Y 2d 101, affd. 369 U. S. 590) there was some doubt as to how far local legislative action could regulate a nonconforming use. The prevention of an owner from continuing a nonconforming use as a result of regulation under the exercise of the police power does not make the ordinance unconstitutional, simply because it prohibits a beneficial use to which property has previously been devoted. Such action may become so onerous as to amount to a taking for which the Constitution requires compensation. As the court pointed out there is no hard and fast rule for determining where regulation ends and taking begins.
The court in the company of counsel and with their consent, inspected the premises which covers a large area. The court was impressed with the proposed improvement which would be beneficial not only to the area but to the town at large. The town has recognized this fact and has patiently awaited its fruition until its patience and that of its citizens have reached a point that calls for action. The court is convinced that the town is and has been willing to reach a reasonable agreement which would provide a final basis for determination.
The court therefore requests the parties to submit for incorporation in a proposed order an agreement terminating the nonconforming use, executed by all the parties, individual and corporate, which would provide for termination of the nonconforming use not later than December 31,1964, which the court believes is a reasonable period to bring the proposed development to fruition. The proposal, the court realizes, calls for substantial *306 expenditures and the defendants should be given a reasonable opportunity to amortize the investment under sensible regulations which will not interfere with the enjoyment by others of their property.
In the event the parties are unable to agree, the court will take further testimony to determine whether or not the action of the town is in fact confiscatory under the tests set forth by the Supreme Court in the Town of Hempstead v. Goldblatt case and whether or not the ordinance is in fact a valid exercise of the police power.