Rockingham,
No. 5180.

CHESTER J. McKINNEY

*v.*

RICHARD RILEY *& a.*

Argued December 3, 1963.
Decided January 31, 1964.

*John B. Ford* (by brief and orally), for the plaintiff.

*Robert Shaw* (by brief and orally), for defendant Richard Riley.

*Boynton, Waldron & Dill* (*Mr. Wyman P. Boynton* orally), for defendant town of Plaistow.

WHEELER, J. Defendant Riley's counsel advances two claims here (1) that the operation of his automobile junk yard is not in violation of the Plaistow zoning ordinances as amended in 1956 prohibiting such operations since he was operating a nonconforming use in 1955, and (2) that if the ordinance is effective as against defendant Riley's operations it was not properly adopted in accordance with the provisions of RSA 31:63.

Counsel for defendant Riley concedes that "the finding of the Court that there was a public nuisance in the operation of the yard could be sustained on the basis of the evidence during the course of the hearing," but contends that a new trial should be granted on this issue because the Court abused its discretion in permitting counsel for the plaintiff to call witnesses in rebuttal on the nuisance issue. Annot. 84 A.L.R. 2d 653. See RSA ch. 267. The order of calling witnesses rests in the sound discretion of the Trial Court and presents no question of law here. A review of the record reveals no abuse of discretion and the defendants' exceptions are overruled. *Glidden* v. *Brown*, 99 N. H. 323; 6 Wigmore, Evidence (3d *ed.*) *ss.* 1873, 1875.

The Court could find as it did that on the plaintiff's evidence alone the methods used by the defendant in operating his junk yard constituted a public and private nuisance. The plaintiff's land abuts the Riley property and the junk yard is 1,000 feet from his dwelling house. He has subdivided his land in building lots and as a result of the burning operations has lost the sale of seven lots. There was evidence that the burning of automobiles caused "black, oily, rubbery smoke" to blow across the

plaintiff's land on the prevailing winds, and at times into his house if windows were not closed. The junking operations were also accompanied by considerable noise. Other properties in the neighborhood were similarly affected. The order enjoining the burning of automobiles is sustained.

The defendant claims the operation of the automobile junk yard is not a violation of the town of Plaistow ordinance as revised in 1956 since at the time of the adoption he was operating a nonconforming use. It is further contended that if the ordinance is applicable it was not properly adopted.

In 1956 at the annual town meeting the town adopted a revised zoning ordinance. Under the provisions of RSA 31:63 two methods are provided for the enactment of zoning ordinances. The legislative body of a municipality shall provide the manner in which such regulations, restrictions and boundaries shall be determined and established and enforced and from time to time amended. No such regulations shall be effective however until after public hearing the notice of which shall be published in a paper of local circulation at least fifteen days before the hearing.

This statute further provides that in case of towns where the legislative body is a town meeting, notice and hearings shall not be required if the warrant for the town meeting at which the matter is to be considered shall contain an article stating ". . . what restrictions, resolutions and boundaries are to be acted upon."

The town of Plaistow proceeded to use both statutory methods to enact its zoning revision. The warrant for the annual town meeting in March 1955 contained an article to appoint a "Zoning Commission" to study the present zoning regulations and to recommend revisions to be submitted to the next annual town meeting. This article was adopted and a committee was appointed. A public hearing was held on January 24, 1956 and continued to February 7th. Notices of the hearing were posted in three places in Plaistow. The defendant objected to the finding of the Court that notice of this hearing was also published in the Haverhill Gazette because of insufficiency of evidence to support it. There was evidence to support the finding of the Court and defendant's exception is overruled.

The report of the zoning commission was made to the selectmen. The town warrant for the annual March 1956 meeting contained the following article: "To see if the town will vote to

accept the zoning ordinance as proposed by the Zoning Commission appointed by the Moderator as directed by vote of the Town." A copy of the report and plan was posted with each copy of the warrant. The affidavit of posting did not specify that the report of the Zoning Commission, including the proposed changes and plan were posted. The proposed changes were published in the town report for the year 1955 and distributed before the 1956 meeting.

No claim is advanced here that the proposed zoning ordinances and plan were not in fact posted with the town warrant despite the failure of the return of posting to so state. RSA 39:7. The evidence warranted the finding by the Court that "Alongside of said town warrant was also posted 'the proposed zoning ordinance.'" While the article in the town warrant relating to the proposed zoning ordinances did not incorporate by specific reference the new ordinance and plan posted with it, to suggest that the voters were not fully informed as to the subject matter to be considered is unrelated to reality. "The object of specific articles in a warrant is, to give information to the voters of the subject-matters to be acted on in town-meeting, that the voters may be enabled to act deliberately and intelligently; and that the will of individuals may not be subjected to the will of a majority any further than it is subjected by law." *Pittsburg* v. *Danforth*, 56 N. H. 272, 276; *Opinion of the Justices*, 101 N. H. 544. We conclude therefore that in adopting the zoning ordinances there was a substantial compliance with the statute. RSA 31:63. *Hecker* v. *McKernan*, 105 N. H. 195.

We now come to a consideration of the ordinance as it relates to junk yards and specifically as it applies to "motor-vehicle junk yard." RSA 267:1. The pertinent section of the zoning ordinance (Art. VII, B) provides: "No junk yard may continue as a nonconforming use for more than one year after the effective date of this ordinance without special permit from the Board of Adjustment. The Board of Adjustment shall prescribe the conditions under which special permit shall be granted."

At the outset we hold that defendants' operations in salvaging, breaking up, burning and storing old automobiles constitutes a junk yard. *Laque* v. *State*, 207 Md. 242, 251; *St. Louis* v. *Friedman*, 358 Mo. 681, 687.

The Court found that ". . . the present operation [of the junk yard] has been greatly extended." There was evidence to sus-

tain this finding. The defendant commenced operation in a small way in 1955, during which time he and his brothers were employed full time in various shoe factories. In 1956 his brother Leonard worked at the yard "more or less half days." In 1958 the selectmen observed five or six cars in the area. The defendant testified in 1957 they burned cars only in the winter, whereas at the time of the hearing they were burning as much as three times a week.

The plaintiff gave up his employment to devote full time to the junk business in 1960. The first income tax for the junking business was returned in 1960. At the time of the hearing there were approximately one hundred cars in the yard. An application for a variance or special permit was made in 1957 which was denied and no appeal taken. The defendant was then ordered to clean up the premises in forty-five days.

Zoning by its very nature is restrictive and regulatory as to the use of land and buildings and provisions which permit expansion and extension of existing uses are generally strictly construed. 2 Rathkopf, The Law of Zoning and Planning, *c.* 62. The finding that the business had been greatly extended and that its conduct was harmful and improper to a segment of the public was warranted. "Pre-existing nonconforming uses may be 'allowed to continue but not to multiply when they are harmful and improper.'" *Keene* v. *Blood,* 101 N. H. 466, 469. See *Edgewood Civic Club* v. *Blaisdell,* 95 N. H. 244, 246.

We next consider whether enforcement of the ordinance by requiring termination of use of the land for a junk yard was a proper exercise of the police power. The validity of provisions requiring the termination of nonconforming uses within a specified period of time has been upheld as a proper exercise of the police power, provided at least that on balance, the public benefit outweighs the private injury, and the time allowed is reasonable. See Annot. 42 A.L.R. 2d 1146; 58 Am. Jur., Zoning, *s.* 148; Note, 44 Cornell L. Q. 450.

While the authorities upholding such amortization ordinances are by no means unanimous, we think that prima facie they are not unconstitutional. The defendant here had ample warning in 1957, when his application was denied, that his conduct of the business was considered a violation of the ordinance. Yet he continued to conduct a greatly expanded nonconforming use until the operations were held to be a public and private nuisance.

In view of the finding that the defendant's use was a public and private nuisance, the order allowing a year in which to terminate the use was a reasonable and valid application of the ordinance, and within the police power. *Seattle* v. *Martin*, 54 Wash. 2d 541; *Northcastle* v. *Windmill Farm Homes*, 232 N.Y.S. 2d 551 (Sup. Ct.).

The order therefore is

*Decree affirmed.*

All concurred.