Hillsborough,
No. 5471.

CLARENCE L. LACHAPELLE

*v.*

GOFFSTOWN.

Argued September 7, 1966.
Decided January 13, 1967.

486

*King, Nixon & Christy* ( *Mr. Robert Christy* orally ), for the plaintiff.

*Raymond A. Cloutier* ( by brief and orally ), for the defendant.

KENISON, C. J. In the beginning zoning "sought to safeguard the future, in the expectation that time will repair the mistakes of the past." Basset, Zoning 105 ( 1940 ). Experience has demonstrated that this expectation and prophecy has not been fulfilled and that something more than time and hope is required

to eliminate or restrict nonconforming uses. Note, 9 U. of Chi. L. Rev. 477, 479 ( 1942 ). "One of the outstanding and most complex problems besetting municipalities as they began a systematic program of city planning through the device of zoning ordinances involved the disposition of nonconforming uses of property." 2 Yokley, Zoning Law and Practice *s*. 16-1 ( 3d *ed.* 1965 ). "It has become apparent that if nonconforming uses are to be dealt with effectively it must be under the law of zoning, a law not limited in its controls to harmful and noxious uses in the common law sense." *Grant* v. *Baltimore*, 212 Md. 301, 308; Norton, Elimination of Incompatible Uses and Structures, 20 Law and Contemp. Prob. 305, 308 ( 1955 ). "Non-conformities may lead to reduced property values, a physical deterioration of neighborhoods, and a general reduction in the desirability of an entire area as a residential section." Katarincic, Elimination of Non-Conforming Uses, Buildings, and Structures by Amortization, 2 Duquesne L. Rev. 1, 4 ( 1963 ).

There is a conflict in the decisions on the power of a municipality to terminate a nonconforming use after a definite period of time stated in the zoning ordinance. Annot. 42 A.L.R. 2d 1146; see the divided opinion in *Harbison* v. *Buffalo*, 4 N. Y. 2d 553; Note, The Abatement of Pre-Existing Nonconforming Uses Under Zoning Laws: Amortization, 57 Nw. U. L. Rev. 323 ( 1962 ); Note, Termination of Nonconforming Uses — Harbison to the Present, 14 Syracuse L. Rev. 62 ( 1962 ). Nevertheless "the greater weight of authority, both early and late, sustains the right to bring the nonconforming use to its predestined terminal point, provided, of course, the termination provisions are reasonable as to time and directed toward some reasonable aspect of land use regulation under properly delegated police power." 2 Yokley, Zoning Law and Practice, *s*. 16-14, *p*. 282 ( 3d *ed.* 1965 ). Hillman, Local Government in 1964 Annual Survey of American Law 627, 636. The "trend of decisions is clearly in favor of approving the amortization theory as a tool necessary for orderly community development . . . There is a clear, though as yet not decisive, movement to approve reasonable legislation requiring the elimination of all non-conformities. The courts are slowly, but persistently, upholding amortization provisions in comprehensive zoning ordinances." Katarincic, Elimination of Non-Conforming Uses, Buildings, and Structures by Amortization, 2 Duquesne L. Rev. 1, 38, 43 ( 1963 ).

Decisions approving the termination of nonconforming uses after a definite period of time are substantial. *Grant* v. *Baltimore,* 212 Md. 301; *Los Angeles* v. *Gage,* 127 Cal. App. 2d 442; *Standard Oil Co.* v. *Tallahassee,* 183 F. 2d 410 ( 5th Cir. 1950 ); *State ex rel Dema Realty Co.* v. *McDonald,* 168 La. 172; *State ex rel Dema Realty Co.* v. *Jacoby,* 168 La. 752; *Wolf* v. *Omaha,* 177 Neb. 545. In *Seattle* v. *Martin,* 54 Wash. 2d 541, a one-year period for the termination of a use not situated in a building was approved. In *Spurgeon* v. *Board of Comm'rs,* 181 Kan. 1008, a two-year period for the removal of auto-wrecking yards and junk yards was upheld. The recent case of *Eutaw Enterprises, Inc.* v. *Baltimore,* 241 Md. 686 ( 1966 ) involved an 18-month termination provision in a zoning ordinance applicable to a check-cashing agency in a residential district as a nonconforming use. The provision was held to be valid and reasonable as applied to the plaintiff in view of the additional factor that the plaintiff continued his check-cashing activities during the litigation period of some five years. See also, Rhyne, Municipal Law, *pp.* 922-923 ( 1957 ); 2 Metzenbaum, Zoning 1256 ( 1966 supp. ); 1 Antieau, Municipal Corporation Law, *s.* 7.24 ( 1966 ); 6 Powell, Real Property, *s.* 869, *pp.* 120-121 ( 1965 ); Bair and Bartley, A Model Zoning Ordinance 35 ( 3d *ed.* 1966 ). The facts in *McKinney* v. *Riley,* 105 N. H. 249, 253 are distinguishable from the present case because the motor vehicle junk yard in that case was both a nuisance and an expanding nonconforming use. However the following statement in the *McKinney* case is pertinent to the problem in this case: "The validity of provisions requiring the termination of nonconforming uses within a specified period of time has been upheld as a proper exercise of the police power, provided at least that on balance, the public benefit outweighs the private injury, and the time allowed is reasonable."

The plaintiff relies on *Akron* v. *Chapman,* 160 Ohio St. 382 and *Hoffmann* v. *Kinealy,* ( Mo. ) 389 S. W. 2d 745, which held that the abatement of nonconforming uses by a time limitation was unconstitutional. Both of these cases have not escaped criticism. 67 Harv. L. Rev. 1283 ( 1954 ); 11 Villanova L. Rev. 189 ( 1965 ); 44 Tex. L. Rev. 368 ( 1965 ); 45 Neb. L. Rev. 636 ( 1966 ). We believe that the rigid approach taken by these cases has a debilitating effect on effective zoning, unnecessarily restricts the police power and prevents the operation

of a reasonable and flexible method of eliminating nonconforming uses in the public interest. It is impossible to treat this problem in the abstract or to apply the same time limitation to all nonconforming uses. However, this should not prevent reasonable attempts to discourage the continuation of nonconforming uses in the process of furthering an important public need without confiscatory damage to the landowner.

Zoning by its nature restricts and regulates the use of land and that is one of the reasons why this court has consistently placed a strict construction on provisions under which attempts are made to expand, multiply or perpetuate nonconforming uses. *Edgewood Civic Club* v. *Blaisdell*, 95 N. H. 244; *Keene* v. *Blood*, 101 N. H. 466, 469, and cases cited. " Any conceivable statute enacted under the police power, and regulating the use of property, must necessarily affect injuriously individual rights . . . . " *Sundeen* v. *Rogers*, 83 N. H. 253, 257. We have recognized that the State and municipalities in the exercise of their police power have considerable zoning flexibility in dealing with the problems presented by junk yards, motor vehicle junk yards and the storage of unregistered or junk motor vehicles. *Hudson* v. *Paradise*, 101 N. H. 389; *McKinney* v. *Riley*, 105 N. H. 249. See also, RSA chs. 266, 267, 267-A; Laws 1965, *c.* 372. " Junked automobiles are considered a health and safety hazard for numerous reasons. They tend to become homes for rats and vermin, children are attracted to them and most junked cars still have gas tanks with gasoline in them. They have trunk lids which may fall shut, or the car may be ready to fall if disturbed. However, another and more subtle criticism of junked autos is that they tend to create neighborhood blight. The presence of old cars on the streets gives the neighborhood a shabby and rundown appearance. This, in turn, creates secondary reactions regarding the cleanliness and care given the neighborhood by its residents. " Report of the Advisory Committee, Junk Auto Disposal Project, sponsored by New Hampshire Municipal Association and New Hampshire Charitable Fund, *p.* 2 ( October 1966 ).

In the present case the record supports the findings, rulings, and decree of the court below, holding that the exception sought by the plaintiff under the zoning ordinance was properly denied. The ordinance in effect adopted the provisions of RSA 267:1 and 2 as applied to nonconforming uses, and we conclude that

490

as applied to the plaintiff and his use of the property, it is valid and constitutional.

*Appeal dismissed.*

BLANDIN, J., sat at argument but took no part in the decision; the others concurred.