Cheshire
No. 6982

TOWN OF SURRY

v.

ROGER M. STARKEY
AND MADOLYN A. STARKEY

January 31, 1975

*Bradley & Talbot (Mr. Homer S. Bradley, Jr.,* orally) for the plaintiff.

*Olson & Mahon (Mr. Arthur Olson, Jr.,* orally) for the defendants.

KENISON, C.J. In this equity action the town of Surry seeks to enjoin defendants from excavating gravel on their land in violation of the applicable zoning ordinance. Defendants purchased twenty-four acres in 1964 with the primary intention of exploiting the various grades of gravel which it contained. Since 1964 they have removed gravel from the land with the result that about six or seven acres are devoted exclusively to gravel removal at the present time. Defendant Roger M. Starkey testified that in addition to

removing gravel he has used some of the land to grow corn and to produce loam.

At a town meeting on March 9, 1971, the town, pursuant to powers granted to it by RSA 31:60, amended section 4 (General District Uses) of its zoning ordinance to read as follows:

"A.2 No land within 200 feet of the centerline of any public highway shall be used for a gravel bank nor shall any part of the topsoil or subsoil be removed from any such premises except in connection with construction undertaken upon the premises; land may be used for such purpose beyond the depth of 200 feet from the centerline of any public highway only with the approval (special exception) from the Board of Adjustment, which may impose such conditions and restrictions thereon as the Board sees fit."

Section 6:1(b) (Non-conforming Uses) of the same ordinance provides that "[N]o present non-conforming use shall be extended or enlarged beyond the limits or area occupied by such non-conforming use on the date of adoption of this Ordinance." It was admitted that the defendants operate the only gravel bank in the town of Surry. The Starkeys did not apply for a "special exception" under section 4:A.2 because they felt that as owners of the property prior to passage of the ordinance they were justified in continuing to use it for the removal of gravel.

The trial court which had the benefit of a view found that the town ordinance was unreasonable since it curtailed the "best use and practically the only use of the land." However, in light of what the Trial Court perceived as an uncertainty in the current status of this State's law regarding the limitation and termination of nonconforming uses, *Loughlin,* J., transferred for our resolution the questions whether the ordinance is reasonable and, if not, what guidelines should be used to regulate the removal of gravel.

A nonconforming use has been defined as a preexisting use of land that is permitted to continue after the enactment of a zoning ordinance which prohibits the use. 6 R. Powell, Real Property § 869 (1973); 2 A. Rathkopf, Law of Zoning and Planning 58-1 (1972); 1 R. Anderson, American Law of Zoning § 6.01 (1968). Despite the fact that nonconforming uses violate the letter and the spirit of zoning laws, they have evolved for the purpose of protecting property rights that antedated the existence of an ordinance from what might be an unconstitutional taking. *Id.* In order to eliminate

nonconforming uses without destroying property rights several methods have been devised, ranging from the abatement of the use as a public nuisance to amortization of the use over a reasonable period of time. Alstyne, *Taking or Damaging By Police Power: The Search for Inverse Condemnation Criteria,* 44 S. Cal. L. Rev. 1, 42 (1971); *LaChapelle v. Goffstown,* 107 N.H. 485, 487, 225 A.2d 624, 626 (1967); *Livingston Rock & Gravel Co. v. County of Los Angeles,* 43 Cal. 2d 121, 127-28, 272 P.2d 4 (1954). Recently, the law of nonconforming uses has been criticized as being an ineffective means of promoting the goals of zoning and an inappropriate mode for eliminating public nuisances. Model Land Development Code art. 4, Comment at 177 (Proposed Official Draft No. 1, 1974); R. Babcock, *What Should and Can Be Done with Nonconforming Uses,* 1972 Institute on Planning, Zoning and Eminent Domain 23, 35.

This court has dealt with the problems raised by the limitation and by the termination of nonconforming uses on several occasions. *Riverview Park, Inc. v. Hinsdale,* 113 N.H. 693, 313 A.2d 733 (1973); *Flanagan v. Hollis,* 112 N.H. 222, 293 A.2d 328 (1972); *LaChapelle v. Goffstown,* 107 N.H. 485, 225 A.2d 624 (1967). As the result of these cases, a flexible standard for testing the reasonableness of town zoning ordinances has evolved which balances the interests of the public in limiting or terminating the use as against the interests of the private party in continuing the use. *Flanagan v. Hollis, supra* at 225, 293 A.2d at 330; *LaChapelle v. Goffstown, supra* at 489, 225 A.2d at 627. It is well-settled law, however, that an ordinance is presumed valid. *Bosse v. Portsmouth,* 107 N.H. 523, 530, 226 A.2d 99, 105 (1967).

In the *Flanagan* case the specific problem of the nonconforming gravel bank was raised. There a town zoning ordinance limited the enlargement of existing gravel excavations to a 25% increase in area and to a maximum depth for the entire area equal to the deepest point on the effective date of the ordinance. There was no allegation that the removal of gravel constituted the only use of the land. *Flanagan v. Hollis, supra* at 224, 293 A.2d at 329. In sustaining the reasonableness of the ordinance we recognized the power of a town to restrict the continuation of a nonconforming use. *Id.* at 225, 293 A.2d at 330; *see* Callies and Quay, *Zoning for Gravel Pits: Simultaneous Rehabilitation According to Plan,* 4 Land-Use Controls Q. 43 (1970).

Although there was some testimony as to alternative uses of defendant's land in the instant case, the trial court specifically found that practically the only use was for the removal of gravel. In addi-

tion while section 4:A.2 of the town's zoning ordinance appears to permit continued use of the land in part as a gravel bank upon application for a "special exception", section 6 of that ordinance prohibits any expansion in the absence of such an exception. *See Flanagan v. Hollis,* 112 N.H. 222, 224, 293 A.2d 328, 329 (1972); 2 A. Rathkopf, Law of Zoning and Planning 60-7 (1972); 1 R. Anderson, American Law of Zoning § 6.47 (1968).

Although zoning ordinances which completely terminate a non-conforming use have been sustained if reasonably related to public health or safety, in all such cases that we have found there has been either a finding that alternative uses for the land exist or a provision in the applicable ordinance allowing continued use for a terminable period. Annot., 10 A.L.R.3d 1226, 1257 (1966); *Goldblatt v. Hempstead,* 369 U.S. 590 (1962); *Consolidated Rock Prods. Co. v. Los Angeles,* 57 Cal. 2d 515, 530, 370 P.2d 342, 351 (1962); *Hadacheck v. Los Angeles,* 239 U.S. 394 (1915). Since neither of those factors is present in this case, we find the town's ordinance to be unreasonable as applied to the defendants. In so finding, however, we do not mean to restrict in any manner the town's statutory power to regulate the removal of gravel or its power to limit the extent or duration of use under the applicable case law. RSA 31:41-b (Supp. 1973) (Powers and Duties of Towns: Hazardous Pits); *Flanagan v. Hollis,* 112 N.H. 222, 225, 293 A.2d 328, 330 (1972); *LaChapelle v. Goffstown,* 107 N.H. 485, 489, 225 A.2d 624, 626 (1967). Public safety and health may be protected by the town through enactments which provide standards for the issuance of permits for continued use or specifying maximum limits for expansion in terms of space and time. *See* Dawson, *Earth Removal and Environmental Protection,* 3 Environmental Affairs 166, 180 (1974); *Riverview Park, Inc. v. Hinsdale,* 113 N.H. 693, 696, 313 A.2d 733, 735 (1973).

What guidelines should be used to regulate the removal of gravel is for the town to determine since its familiarity with the facts will permit the fashioning of the most appropriate solutions. RSA 31:83; *Bosse v. Portsmouth,* 107 N.H. 523, 532, 226 A.2d 99, 105 (1967).

*Remanded.*

All concurred.