Sullivan
No. 84-033

TOWN OF PLAINFIELD

v.

RAYMOND SANVILLE & a.

December 31, 1984

*Buckley & Zopf*, of Claremont (*Robert B. Buckley, Jr.*, on the brief and orally), for the plaintiff.

*New Hampshire Legal Assistance*, of Claremont (*Shelley A. Simpson* on the brief and orally), for the defendants.

DOUGLAS, J.    This case is before us as an interlocutory transfer without ruling by the Superior Court (*DiClerico*, J.) pursuant to RSA 491:17 and Supreme Court Rule 9. The issues presented are: 1) whether the mobile home zoning ordinance of the town of Plainfield conformed to RSA 31:119 (Supp. 1983) (recodified at RSA 674:32 (Supp. 1983)) during the time defendants placed a mobile home on their lot in Plainfield; and 2) if the ordinance did not comply with the statute, whether such noncompliance invalidated the ordinance so that the defendants established a legal nonconforming use.

The town adopted a comprehensive zoning and mobile home ordinance in 1974. As amended in 1979, the ordinance divided Plainfield into six zones. Mobile homes were permitted only in mobile home parks in only two of these zones: village residential and rural residential. Additionally, the Plainfield Zoning Board of Adjustment could grant temporary location and occupancy permits for mobile homes in other zones when it determined that such use was a temporary expedient.

The Sanvilles purchased a five-acre lot of land in the Rural Conservation II zone in August 1981. In September 1981, they obtained a building permit for a single-family house and a ninety-day permit for the location and occupancy of a camper on their lot while they constructed a house on the lot.

In October 1981, the Sanvilles replaced the camper with a mobile home, and in April 1982, received a ninety-day extension of the permit to occupy their mobile home.

On July 13, 1982, the Sanvilles received a letter from the town zoning administrator notifying them that their temporary permit had expired and that, because no definite progress had been made on their home, they had to remove the mobile home by August 1, 1982. Their request for another temporary permit was denied by the zoning administrator, and they appealed to the zoning board of adjustment. On August 9, 1982, the zoning board of adjustment held a hearing at which the Sanvilles testified that: they intended to build a house once money was available and interest rates were down; they were unable to move their mobile home to a mobile home park because the parks were full; and they believed that State law allowed mobile homes at any location in town if the mobile home parks were full.

The zoning board of adjustment upheld the zoning administrator's refusal to renew the Sanvilles' permit because of their failure to comply with the town's mobile home ordinance. On September 9, 1982, the town filed for an injunction in superior court, based on its zoning and mobile home ordinances, requesting that the Sanvilles be ordered to remove their mobile home from their property.

At the time of the Sanvilles' request for another temporary permit there were no individually owned lots in the mobile home parks of Plainfield. There were also no approved subdivisions in Plainfield in which a person could purchase a lot for the permanent placement of a mobile home, nor had the town ever received an application to develop such a subdivision. The town now takes the administrative position that the term "mobile home park," prior to the 1983 amendments to the mobile home zoning ordinance, included the concept of a subdivision in which individual lots for mobile home occupancy could be sold rather than leased. At all times in this case, the town's zoning and mobile home ordinances prohibited the permanent placement of a mobile home in the zoning district in which the defendants' property is located.

The legislature enacted RSA 31:119 (Supp. 1983) in 1981. Laws 1981, 406:2. The purpose of this statute was to "provide adequate housing opportunities . . . [in] affordable, reasonably priced, quality homes" (Laws 1981, 406:1) by prohibiting towns from totally exclud-

ing manufactured housing. Laws 1981, 406:2. RSA 31:118 (Supp. 1983) (recodified at RSA 674:31 (Supp. 1983)), defined manufactured housing to include what are commonly referred to as mobile homes.

In RSA 31:119 (Supp. 1983), the legislature delineated three ways by which a municipality, if it chooses to do so at all, can regulate the location of manufactured housing:

"A municipality which adopts land use control measures shall allow, in its sole discretion, manufactured housing to be located on individual lots in some, but not necessarily all, residential areas within the municipality, or in mobile home parks and subdivisions created for the placement of mobile homes on individually owned lots, or in all 3 types of locations."

This statute was approved on June 23, 1981, and became effective on August 22, 1981. Laws 1981, 406:3. Accordingly, noncomplying municipalities had to enact new regulations in conformance with RSA 31:119 (Supp. 1983).

The superior court transferred the following questions to this court without ruling:

"I. Does the March, 1982 Plainfield Zoning and Mobile Home Ordinance, pursuant to which Plaintiff seeks injunctive relief against the Defendants, comply with RSA 31:119?

II. Have the Defendants obtained a nonconforming use regarding the location of a mobile home on their property:

a) because of the failure of the March, 1979 Plainfield Zoning and Mobile Home Ordinance to comply with RSA 31:119? and/or

b) if the answer to Question I is no, because of the failure of the March, 1982 Plainfield Zoning and Mobile Home Ordinance to comply with RSA 31:119?"

The Sanvilles contend that because the Plainfield Zoning and Mobile Home Ordinances did not comply with RSA 31:119 (Supp. 1983) on the date upon which that statute went into effect, or when the ordinance was amended in 1982, the ordinance as applied to them was superseded and therefore invalid. They further argue that, because the ordinance was invalid, Plainfield had no effective mobile home regulations which restricted the placement of mobile homes on individually owned lots. Therefore, the placement of their mobile home in Rural Conservation II zone was legal, and remains legal, as a nonconforming use. We agree with the Sanvilles' position.

Plainfield's mobile home zoning ordinance was not in compliance with RSA 31:119 (Supp. 1983) when that statute took effect because it impermissibly restricted the number of mobile home parks and the number of spaces within the parks. As the town admitted in its brief, "such numeric restrictions would not comply with the statutory requirement that mobile homes, either located in mobile home parks or subdivisions, be allowed within at least one entire zoning district within the Town."

The Sanvilles argue that the ordinance did not comply with the statute for the additional reason that, before the ordinance was amended in 1983, it did not provide for any individual ownership of land upon which to put mobile homes as required by RSA 31:119 (Supp. 1983). The town contends that both the 1979 and 1982 versions of the ordinance provided for ownership because the term "mobile home park" included the concept of "subdivision" in which lots could be purchased.

There is no indication in the language of the mobile home ordinance, which governs mobile home parks, Plainfield Zoning Ordinance § 3.4, that the town allowed ownership of lots within such parks. The town defined "mobile home park" twice in its 1979 zoning ordinance. Section 8.7 defined such a park as:

"Any tract of land designed, maintained or intended for the purpose of providing a location or accommodation for two or more mobile homes, including all buildings used or intended for use as a part of the equipment or accessories thereof whether or not the same or any part thereof is held or operated for gain . . . ."

Appendix I, Article XIII of the zoning and mobile home ordinance contained the following definition:

"K. Mobile Home Park. Any parcel of land which is used or intended for the purpose of supplying to the public parking spaces for two or more mobile homes, whether or not a charge is made for such accommodations."

Neither of these definitions expressly states whether the "location," "accommodation" or "parking space" within the "parcel" or "tract" is being sold or leased. Nevertheless, their use in this context is obviously more appropriate to a lease situation than to the ownership of property.

A 1982 amendment to § 8.7 of the zoning ordinance redefined mobile home parks as follows:

"Any tract of land providing prepared locations and accommodations for mobile homes, including their acces-

sory buildings, whether or not any of the mobile home units are the property of the mobile home park owner."

Again, there is no language which indicates an intent to broaden the common meaning of a mobile home park, by which is generally meant a "division of land for the purpose of renting the parts," *Dearborn v. Town of Milford*, 120 N.H. 82, 84, 411 A.2d 1132, 1133 (1980), to include individual fee *ownership* of lots within the park.

Section 3.4 of the zoning ordinance states that mobile home parks will be regulated by the mobile home ordinance. That ordinance not only does not contain a specific provision for lot ownership, but its language strongly suggests a business enterprise where the owner of the park will lease out spaces. For example, the ordinance speaks of the "proprietor" of the park and of persons "in charge of mobile homes" in the park (§ 3.2(b)). It also requires park owners to "maintain a register" of units within the park containing the date of arrival, description of the unit, and its "parking location," and further requires the park owner to notify the town "as soon as he learns of the intent of the owner of a unit to remove it." (§ 5.2 and § 5.3).

Furthermore, the ordinance contains restrictive provisions which are contrary to fee ownership of property. For example, a final mobile home permit is good for ten years, subject to renewal by the board of adjustment every five years (§ 4.2(f)). Permits are not transferable upon sale of the park but are again subject to the discretion of the board of adjustment (§ 4.2(g)). In addition, mobile home parks are subject to semi-annual inspections by town officials, § 5.1, and permits may be revoked if the park is a nuisance or is maintained in an unsafe or unsanitary manner (§ 4.2(h)).

The town points to the fact that both its 1979 and its 1982 zoning ordinances permit mobile home parks only "when submitted as a planned residential development," as proof that it would have permitted the sale of lots within mobile home parks before 1983 (PLAINFIELD ZONING ORDINANCE, Schedule A: Village Residential and Rural Residential Zoning Districts). Section 4.12 of the zoning ordinance governs planned residential developments, and it sets forth the requirement that an owner must submit a "subdivision" plan for planning board approval at the onset of his application to develop his land in this manner. Thus, the town concludes, lots within mobile home parks could be both sold and leased.

The record does not indicate whether or not the zoning and mobile home ordinances of Plainfield defined "subdivision." However, the zoning enabling *statute* suggests that "subdivision" need not be synonymous with sale of lots.

"'Subdivision' means the division of the lot, tract, or parcel

of land into 2 or more lots, plats, sites, or other divisions of land for the purpose . . . of *sale, rent, lease,* condominium conveyance *or* building development." RSA 672:14 (Supp. 1983) (emphasis added).

Further, even if the town could show that "subdivision," as used in § 4.12 of the zoning ordinance, meant *both* lease of land *and* ownership of land, that enabling section will not override the more restrictive mobile home ordinance. Section 8.2 of the zoning ordinance states that if any of the sections of its ordinances conflict, the provisions of the more restrictive shall apply. Thus, the interpretation of the term "subdivision" in the mobile home ordinance will prevail over any conflicting use of that term in the zoning ordinance. As stated previously, the language of the mobile home ordinance implies a lease arrangement only.

■ We hold, therefore, that neither the 1979 nor the 1982 mobile home ordinances provided for ownership of land upon which to place mobile homes, and to that extent they are contrary to RSA 31:119 (Supp. 1983) and thus are invalid. Next we decide whether this invalidity resulted in a legal nonconforming use for the Sanvilles.

RSA 31:119 (Supp. 1983) provided that each town in New Hampshire must allow ownership of lots upon which to put mobile homes, either in subdivisions or on individually owned lots. Mobile homes need not be allowed in all areas of a community, however, and towns retain discretion to decide in which districts they may be located. If a town passed no ordinance regarding the placement of mobile homes, such homes could be located in any section of the town.

The language of Plainfield's zoning and mobile home ordinances did not clearly provide for any ownership of lots upon which to place mobile homes. To that extent they failed to comply with RSA 31:119 (Supp. 1983) and were invalid. *See Bell v. Arel,* 123 N.H. 311, 315, 461 A.2d 108, 110 (1983). A resident of Plainfield could not have read the ordinances and been advised by them that he had a right to buy a lot in a subdivision for the placement of his mobile home, as the town contends. Because no provision was made for the purchase of land upon which to place mobile homes, there were no regulations regarding such placement upon individually owned lots when RSA 31:119 (Supp. 1983) took effect. Mobile home owners could, therefore, place their homes on lots anywhere in Plainfield.

■ Because the Sanvilles moved their mobile home *onto their* lot prior to 1983, the year in which the town amended its zoning and mobile home ordinances to provide clearly for ownership of lots in

subdivisions, the Sanvilles established a legal nonconforming use which continued even after the enactment of the 1983 amendments. *See Surry v. Starkey*, 115 N.H. 31, 32, 332 A.2d 172, 174 (1975).

The town's argument that it administratively interprets its zoning and mobile home ordinances to permit the ownership of individual lots by mobile home owners is unpersuasive. The town of Plainfield has never actually had occasion to interpret these regulations, and took this position only after the initiation of this case.

We are not in a position to judicially grant grace periods, but do note the potential difficulties that State zoning laws such as RSA 31:119 (Supp. 1983) may create for towns. This statute, passed on June 23, 1981, became effective sixty days later on August 22, 1981. The delay in disseminating information to hundreds of lay town officials, regarding legislative actions, could put a town out of compliance before it ever becomes aware of the existence of a particular legislative act. Additionally, the annual nature of town meetings, and the cumbersome process through which municipal zoning laws are adopted, are mechanically not conducive to quick amendment of zoning laws.

The legislature is to be commended for attempting to correct the problem which led to this case, when it recently recodified the zoning enabling statute. Laws 1983, 447:2. Municipalities now have two years from the effective date of the recodification, January 1, 1984, to make their ordinances conform with the enabling statute. Hopefully, future zoning statutes will provide a similar time frame for towns to conform with such legislation.

Accordingly, question I of the transferred questions is answered in the negative and question II in the affirmative.

*Remanded.*

All concurred.