Goffstown District Court
No. 86-063

TOWN OF GOFFSTOWN

v.

ERNEST THIBEAULT, III

July 10, 1987

*Raymond A. Cloutier Law Offices*, of Manchester (*Richard E. Fradette* on the brief and orally), for the plaintiff.

*McKean, Mattson & Mulligan P.A.*, of Gilford (*Edward J. Fitzgerald, III*, on the brief and orally), for the defendant.

THAYER, J. This case comes before us on an interlocutory transfer without ruling, pursuant to Supreme Court Rule 9, by the Goffstown District Court (*Ahlgren*, acting justice, *see* RSA 502-A:5) of three questions pertaining to the validity of earth excavation

regulations of the Goffstown Zoning Ordinance. We shall state the questions and their answers after setting forth the relevant facts.

Article IV.K.1. of the Goffstown Zoning Ordinance reads as follows: "No earth shall be removed from any parcel of land in the Town of Goffstown for sale except as herein provided." The rest of the Article provides for, *inter alia,* a permit application process, guidelines for the issuance of permits, and the continuance of existing earth removal activities.

The Goffstown Police Department charged the defendant with sixteen counts of removal of earth without a permit in violation of Article IV.K. of the Goffstown Zoning Ordinance. The defendant pled not guilty to the charges brought against him. On July 7, 1984, the defendant filed a motion to dismiss claiming that "[t]he sections of the Ordinance under which he [was] charged [were] not in conformity with the grant of authority given to towns by the State Enabling Legislation," apparently because the board of selectmen was allowed to grant what the defendant contended were exceptions to the ordinance. On July 12, 1984, the motion to dismiss was argued. The court took the motion under advisement without issuing a ruling. After argument, the parties stipulated to certain facts, one of which was that "[a] pit has existed on the property for over twenty-five years and gravel has been removed from it at times other than those charged in the violations and since the adoption of Article IV(K) of the Goffstown Zoning Ordinance."

On February 18, 1986, the district court transferred to this court the following three questions without ruling: (1) must Article IV.K. of the Goffstown Zoning Ordinance be adopted pursuant to the zoning power conferred on the towns by RSA 674:16 (formerly RSA 31:60 *et seq.*); (2) if Article IV.K. must be adopted pursuant to the zoning power, does it conform to the requirements of the enabling legislation vesting authority to decide zoning issues in a board of adjustment (RSA 674:33, formerly RSA 31:72 and RSA 31:66); and (3) is Article IV.K. repugnant to the New Hampshire Constitution and to State statute (RSA 674:19, formerly RSA 31:62) in its infringement of the property owner's rights created by past use of the land?

The defendant does not challenge the vote or procedure in which Article IV.K. was adopted. Instead, the defendant challenges the manner in which the Town of Goffstown has chosen to exercise what the defendant claims is the town's zoning power. In particular, the defendant's first argument is that Article IV.K. is a zoning ordinance and that therefore no authority other than the zoning statute, *see* RSA 674:16 *et seq.,* exists to enable the adoption

of Article IV.K. The defendant then cites *Beck v. Town of Raymond,* 118 N.H. 793, 394 A.2d 847 (1978) to support his contention.

In *Beck,* this court stated that while municipalities are accorded "fairly wide latitude in using their general police power to develop limited types of land use controls," *id.* at 798, 394 A.2d at 850, "the general police power delegated to a municipality pursuant to RSA 31:39 may not be used as a usual and expedient mechanism for effecting zoning regulations which would otherwise fall within the scope of RSA 31:60–89." *Id.* at 800, 394 A.2d at 851. The *Beck* court restated the following test for determining whether a land use regulation may be enacted by a town under the general police power without compliance with the zoning enabling act:

> " '[t]he court must consider the nature and purpose of the regulations, their relationship if any to a general plan of development, their comprehensiveness, their effect on property values and property rights, and the situation surrounding their passage.' "

*Id.* at 799, 394 A.2d at 851 (quoting *Village House, Inc. v. Town of Loudon,* 114 N.H. 76, 78, 314 A.2d 635, 636–37 (1974)). Thus, if a land use regulation is not intended to act as part of a comprehensive regulatory scheme, and does not substantially infringe on the rights of property owners, it is not considered to be an ordinance that must be adopted pursuant to the zoning enabling legislation. *See Village House, supra* at 79, 314 A.2d at 637.

We do not believe, however, that a *Beck* analysis is proper in the instant case. *Beck* and *Village House* were concerned with ordinances restricting the issuance of building permits and prohibiting the establishment of additional mobile home parks, respectively. These two land uses were not specifically addressed in the statutory provisions that comprised the State delegation of general police powers to the towns. In both *Beck* and *Village House,* then, a substantial initial issue existed as to the validity of the ordinances in question under the general police power.

■ The situation in the instant case differs in that both the case law and the statutory law of this State have already recognized the regulation of earth excavation as an exercise of the police and general welfare powers of the towns, exclusive of the authority granted by the zoning enabling legislation. RSA 31:41-b (Supp. 1986); RSA ch. 155-E (Supp. 1986); *Surry v. Starkey,* 115 N.H. 31, 34, 332 A.2d 172, 175 (1975). RSA chapter 155-E (Supp. 1986), for example, is part of Title XII, entitled "Public Safety and Welfare," and establishes a comprehensive system for local regulation of earth

excavations. The avowed legislative purpose of RSA chapter 155-E (Supp. 1986) is

> "[t]o grant municipalities the authority to cope with the recognized safety hazards which open excavations create; to safeguard the public health and welfare; to preserve our natural assets of soil, water, forests and wildlife; to maintain aesthetic features of our environment; to prevent land and water pollution; and to promote soil stabilization."

Laws 1979, 481:1.

■ RSA chapter 155-E (Supp. 1986) thus constitutes a grant of authority to local governing bodies to regulate a specific land use; namely, earth excavations. In addition, the legislature did not incorporate RSA chapter 155-E (Supp. 1986) as part of the zoning enabling laws but; rather, placed it in Title XII pertaining to public welfare and safety. This separate placement of RSA chapter 155-E (Supp. 1986), and the fact the chapter itself involves a particular land use not specifically addressed in the zoning enabling statute, can only prompt the inference that the legislature intended RSA chapter 155-E (Supp. 1986) to exist as a grant of authority independent of the zoning enabling legislation. If we were to accept the defendant's argument that Article IV.K. could only be validly adopted pursuant to the authority created by the zoning enabling legislation, we would effectively be limiting the operation of RSA chapter 155-E (Supp. 1986) only to those situations where it was consistent with the requirements of the zoning enabling laws. Such a limitation would conflict with the ostensible legislative purpose to create an independent, specialized law enabling localities to regulate land excavations.

Many of the same considerations that we have just discussed with regard to RSA chapter 155-E (Supp. 1986) are also applicable to RSA 31:41-b (Supp. 1986). RSA 31:41-b (Supp. 1986), which is part of Title III, chapter 31, entitled "Powers and Duties of Towns," reads as follows:

> "*Hazardous Pits.* Towns shall have the power to make bylaws regulating land excavation for the protection of the health or safety of the public. Whoever violates any such bylaw shall be guilty of a violation for each offense and the penalty therefor shall inure to such uses as said town may direct."

Like RSA chapter 155-E (Supp. 1986), RSA 31:41-b (Supp. 1986) thus stands as a particular grant of authority to the towns to regulate earth excavations outside of the zoning enabling laws. Once again, if we were to hold that RSA 31:41-b (Supp. 1986) could not serve as a source of enablement for Article IV.K., we would render RSA 31:41-b (Supp. 1986) devoid of any force independent of the zoning enabling legislation. Finally, in *Surry*, decided a year after the significant decision of *Village House*, which was relied upon by *Beck*, this court explicitly recognized the ability of towns to regulate earth excavations under the police power provision of RSA 31:41-b: "we do not mean to restrict in any manner the town's statutory power to regulate the removal of gravel or its power to limit the extent or duration of use under the applicable case law. RSA 31:41-b (Supp. 1973) (Powers and Duties of Towns: Hazardous Pits)." *Surry*, 115 N.H. at 34, 332 A.2d at 175 (other citations omitted).

■■ Given both the express legislative delegation of police powers to the local bodies for the regulation of earth excavation, exclusive of the zoning enabling legislation, as well as this court's recognition of such a delegation, we believe a *Beck-Village House* analysis is inapposite. The performance of such an analysis would lead us only to conclude either (1) that Article IV.K. is not subject solely to the zoning enabling laws, a conclusion we believe is already required by the existence of the two earth excavation enabling laws already discussed, or (2), conversely, that Article IV.K. must conform to the zoning enabling laws, a conclusion that would seriously undermine RSA chapter 155-E (Supp. 1986) and RSA 31:41-b (Supp. 1986) as independent entities and require the rejection, in part, of this court's decision in *Surry*. In situations such as this, where statutory provisions for particular land use regulations exist outside the sphere of the zoning laws, those specific land use enabling laws must be accorded full force and effect and not fall subject to any possible extrinsic limitations of the zoning enabling legislation. *See* D. HAGMAN AND J. JUERGENS-MEYER, URBAN PLANNING AND LAND DEVELOPMENT CONTROL LAW 22.14 (2d ed. 1986). We therefore hold that RSA chapter 155-E (Supp. 1986) and RSA 31:41-b (Supp. 1986) constitute proper enabling statutes for local earth excavation ordinances such as Article IV.K. of the Goffstown Zoning Ordinance. Consequently, we answer the first question in the negative: Article IV.K. of the Goffstown Zoning Ordinance is not required to be adopted pursuant to the zoning power of RSA 674:16 *et seq.*

■ Once it has been determined, as it just has, that Article IV.K. is not required to be adopted pursuant to the zoning enabling legislation, it is not necessary, in view of the manner in which the questions were presented to us, to proceed to the second transferred question: whether Article IV.K. does conform to the zoning enabling legislation of RSA 674:33. The district court phrased the second question in the conditional, requiring us to respond to it only if we have concluded that Article IV.K. must indeed be adopted pursuant to the zoning power. Nevertheless, since an earth excavation ordinance may, in general, be adopted pursuant to the zoning power, see *Beck*, 118 N.H. at 798, 394 A.2d at 850, we will proceed to answer the second transferred question.

■■ Section 5 of Article IV.K. explicitly states that "[n]o permit for the removal of earth shall be issued by the Selectmen or enforcement officer, except as provided in Section 4." Section 5 then provides for approval by the board of adjustment after a public hearing in all instances other than those of section 4. The defendant asserts that the permit categories of section 4 are in reality exceptions to the zoning ordinance, and that only the board of adjustment can grant exceptions. The five permit categories, claimed as constituting exceptions, are earth removal for: agricultural activities, cemetery operations, landscaping, building construction, and construction of private roads or parking spaces. The defendant is correct in pointing out that the board of adjustment, and not the town selectmen, "has the power to grant special exceptions." *Buxton v. Town of Exeter*, 117 N.H. 27, 29, 369 A.2d 188, 189 (1977); see RSA 674:33, IV. Exceptions provide relief from the operation of the ordinance, and the conditions for granting them "must be found in the ordinance and may not be varied." *Stone v. Cray*, 89 N.H. 483, 487–88, 200 A. 517, 521 (1938). Thus, in order for one to view the five categories of permissible earth removal as exceptions, those categories must be facially includible within the prohibitions of the ordinance.

■ Article IV.K. prohibits earth removal for sale, except as provided for therein. The five categories of Article IV.K.4., however, do not encompass earth removal for purposes of sale. Instead, Article IV.K.4. addresses instances of earth removal such as minor alterations to the natural state of the earth or excavations incidental to other regulated activity. One such instance, for example, pertains to earth removal as part of cemetery operations. One is hard pressed to imagine that the removal of earth furnishes much income, if any at all, to a cemetery. At the very least, the

present record does not disclose any evidence of a profit-making quality to these five categories. The fact that the five permissible uses of Article IV.K.4. are not within the ordinary "for sale" proscription of the ordinance thus prevents Article IV.K.4. from acting as a list of exceptions. The situation would be different if Article IV.K.4's enumeration of permitted uses constituted removal of earth for purposes of sale. Then the uses would fall within the general prohibition of Article IV.K., and their separation from the proscriptive ambit of the ordinance would render the uses true exceptions. Such is not the case with the obviously non-profit list of permissible earth removal activities. The five categories of Article IV.K.4. are not exceptions. Therefore, Article IV.K. does not conflict with the requirement of RSA 674:33 vesting authority to grant exceptions in a board of adjustment.

The third question transferred involves consideration of whether Article IV.K.'s infringement of the property owner's previous use of the land is repugnant to RSA 674:19 and the New Hampshire Constitution. This court has upheld zoning ordinances that terminate nonconforming uses where "there has been either a finding that alternative uses for the land exist or a provision in the applicable ordinance allowing for continued use for a terminable period." *Surry*, 115 N.H. at 34, 332 A.2d at 175; *see LaChapelle v. Goffstown*, 107 N.H. 485, 488, 225 A.2d 624, 626 (1967) (zoning ordinance provisions "'requiring the termination of nonconforming uses within a specified period of time [are] upheld as a proper exercise of the police power, provided . . . the public benefit outweighs the private injury, and the time allowed is reasonable'") (quoting *McKinney v. Riley*, 105 N.H. 249, 253, 197 A.2d 218, 222 (1964)).

The statement of facts transferred does not disclose whether or not alternative uses for the defendant's property exist. Nor does the statement reflect a challenge by the defendant to the nine-month period provided by the ordinance within which existing earth removal activity must cease, unless a permit is obtained. In addition, the extent of the defendant's argument on this third question consists of three sentences in his brief, two in the summary of the argument and one in the argument itself. In the absence of a full record and thorough argumentation under the relevant standard, we are both unable and unwilling to answer the third question.

Lastly, the plaintiff requests us to award attorney's fees it incurred in obtaining an injunction against the defendant in the superior court. Supreme Court Rule 23 permits the award of

attorney's fees to a prevailing party in appeals that are frivolous or taken in bad faith. *See Indian Head National Bank v. Corey*, 129 N.H. 83, 89, 524 A.2d 70, 73 (1986). This case, however, is an interlocutory transfer without ruling, not an appeal. It is inappropriate for us even to consider an award of attorney's fees to the plaintiff. In addition, the plaintiff's citation of RSA 155-E:10, II (Supp. 1986) as supporting an award of attorney's fees by this court is misdirected. RSA 155-E:10, II (Supp. 1986) states that the superior court, and not the Supreme Court, has the power to award attorney's fees in those circumstances where the regulator of an earth excavation ordinance obtains a cease and desist order from the superior court.

*Remanded.*

All concurred.