528

Real Estate Commission
No. 85-556

## Petition of Contoocook Valley Paper Company
## (New Hampshire Real Estate Commission)

July 23, 1987

*Robert H. Rowe*, of Amherst, by brief and orally, for the petitioner.

*Gould & Greene P.A.*, of Meredith (*Michael E. Gould* on the brief), by answer for the petitionee, Robert Hicks, filed no brief.

THAYER, J. The petitioner, Contoocook Valley Paper Company (Contoocook Valley), appeals by means of a petition for writ of certiorari from a decision of the New Hampshire Real Estate Commission. The commission ruled that the petitionee-real estate broker did not violate any provisions of RSA 331-A:6-b, which regulates the conduct of real estate brokers and salesmen, during the course of negotiations relative to the attempted sale of the petitioner's land. We reverse and remand.

Contoocook Valley is a closely-held corporation of which Mary Fletcher and her daughter, Victoria, are the sole stockholders. On February 9, 1983, Contoocook Valley entered into an exclusive listing agreement with the Norwood Group, Inc., a real estate brokerage firm, for the sale of the petitioner's land and buildings in Henniker. The Norwood Group assigned one of its agents, Robert Hicks, to represent Contoocook Valley in the sale. Hicks was, and still is, a licensed real estate broker. The Norwood Group recommended a sale price of $1,600,000 for the Contoocook Valley property.

During the period of the listing agreement, Hicks was in contact with a number of prospective purchasers, including one Walter Steere. The exclusive listing agreement expired on August 9, 1983; however, Hicks and Mary Fletcher agreed that Hicks would continue to market the property. At the commission's hearing, Hicks testified that he continued to promote the property to individuals who had expressed interest before the expiration of the written listing agreement. On April 1, 1984, Hicks telephoned Fletcher and said he had an offer from Walter Steere. A meeting was scheduled for the next day. At that time, Hicks presented an offer of $1,100,000 from Steere. Fletcher and her daughter discussed the matter and decided to accept the offer.

Hicks testified that before Fletcher signed the purchase and sale agreement, he told her that he intended to invest a portion of his commission in the property that Steere was purchasing in return for a percentage interest in the property. Fletcher claimed Hicks told her of his anticipated financial interest in the purchaser's venture only after she had signed the agreement. Whatever the specific timing of Hicks' statement, Fletcher told Hicks she did not care how he invested his commission.

The purchase and sale agreement provided for, aside from the $1,100,000 sale price, a closing date of on or before June 1, 1984, and nine contingencies to the sale. One of the contingencies was that the buyer be able to obtain financing for a first mortgage in the amount of $550,000, at an interest rate of no more than 13 1/2%, payable for a term of at least 20 years. The closing never occurred, apparently because the parties were unable to meet the conditions of the purchase and sale agreement. At some point around the scheduled closing date, Mary Fletcher became convinced that Hicks was not acting on her behalf, but rather for Steere. She filed a complaint with the real estate commission alleging, *inter alia*, that Hicks had represented the buyer in the transaction, and that he had violated RSA 331-A:6-b, I, II, III, X, XIV, and XXI.

On August 20, 1985, the commission heard the complaint and, in a decision dated August 26, 1985, concluded that Hicks had not been guilty of any unlawful, deceitful, dishonest, or fraudulent conduct or of any act prohibited by RSA 331-A:6-b. The commission did not render any findings of fact to support its decision. This appeal ensued.

On appeal, the petitioner argues (1) that the commission erred in rendering a decision without providing supporting findings of fact; and (2) that Robert Hicks was a fiduciary of the petitioner, and consequently (a) was obligated not to act for both parties in the transaction unless consent had been obtained in writing from the interested parties pursuant to RSA 331-A:6-b, X, and (b) breached his fiduciary duty in failing to disclose to Fletcher his true interest in the enterprise purchasing Fletcher's property as required by RSA 331-A:6-b, XIV. The petitionee did not file a formal brief, instead relying on his answer to the petition. The answer does not contain a response to the petitioner's first argument regarding the absence of factual findings to support the real estate commission's decision. The petitionee's response to the remainder of the petitioner's arguments is that RSA 331-A:6-b, X does not require notification in writing of a broker's dual representation in a transaction. The petitionee asserts that he did

in fact notify Fletcher, in compliance with RSA 331-A:6-b, XIV, of his intent to invest a portion of his commission in the enterprise purchasing the property.

█ The first issue we dispose of pertains to the formal aspects, and not the substance, of the real estate commission's decision. The decision of the commission simply stated that "the complainant, failed to establish that the licensee, Robert Hicks, was guilty of any unlawful, deceitful, dishonest, fraudulent conduct or of any prohibited act contained in RSA 331-A:6-b, Laws of the State of New Hampshire." As such, the real estate commission's determination stood unsupported by any findings of facts whatsoever. This conclusory disposition conflicted with RSA 541-A:20 (Supp. 1986), which requires that "[a] final decision or order adverse to a party in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated." *See Appeal of Loudon Road Realty Trust*, 128 N.H. 624, 627, 517 A.2d 843, 845 (1986). The commission erred in not rendering the requisite findings of fact. The absence of factual determinations makes our task of review considerably more difficult. In disposing of the substance of this appeal, consequently, we will restrict ourselves to relying only on those facts undisputed below.

The next and primary issue is that of the petitionee's alleged violations of RSA 331-A:6-b. The petitioner's complaint filed with the commission asserted that Hicks violated RSA 331-A:6-b, I, II, III, X, XIV and XXI. On appeal, however, the petitioner only argues under paragraphs X and XIV. We thus proceed to address Hicks' alleged violations of these two paragraphs. The relevant statutory provisions read as follows:

"Notwithstanding any other provisions of the law to the contrary, the commission shall have the power to refuse a license for cause or to suspend or revoke a license in accordance with the procedure prescribed in RSA 331-A:7 where it has been obtained by false representation, or by fraudulent act or conduct, or where a licensee is found guilty after hearing of performing or attempting to perform any of the following:

. . . .

X. Acting for more than one party in a transaction without the knowledge and consent in writing of all parties for whom he acts, or

. . . .

XIV. Failing to disclose to an owner his intention or true position if he, directly or indirectly through a third party, purchases for himself or acquires or intends to acquire any interest in or any option to purchase property which has been listed with his office to sell or lease, or . . . ."

RSA 331-A:6-b, X, XIV.

We begin by characterizing the general nature of a broker's duties to the principal. The word "fiduciary" is mentioned nowhere in the text of RSA 331-A:6-b. This court, however, has acknowledged that a broker occupies a fiduciary relationship to the vendor of realty. *Crowley v. Global Realty, Inc.*, 124 N.H. 814, 819–20, 474 A.2d 1056, 1059 (1984).

RSA 331-A:6-b imposes upon the broker of realty many of the standard, common law fiduciary obligations of a broker to the principal. The requirements of RSA 331-A:6-b, X and XIV, for example, that a broker must fully disclose the representation of more than one party in a transaction, closely parallel the traditional fiduciary duty of a broker to disclose any dual agency capacity to the principals involved. *Mersky v. Multiple Listing Bureau*, 73 Wash. 2d 225, 228–29, 437 P.2d 897, 899 (1968); RESTATEMENT (SECOND) OF AGENCY § 391 (1958). Similarly, the mandate of RSA 331-A:6-b, XXI that a broker or salesman not do anything demonstrating "bad faith, dishonesty, untrustworthiness or incompetency" approximates the duty of the broker to act in the utmost good faith to the seller. *Crowley supra.* RSA 331-A:6-b, in effect, codifies much of the common law of fiduciary duty owed by real estate brokers to vendors, and the provision must be read and applied in that context.

Determination of Hicks' obligations under RSA 331-A:6-b is dependent, in part, on ascertaining whether an actual brokerage relationship with Fletcher had been established and, if so, when that relationship terminated. A broker is a particular type of agent. RESTATEMENT (SECOND) OF AGENCY § 1 comment e (1968). Consequently we turn to principles of agency law to answer the question of whether Hicks was acting in a brokerage capacity. *See ERA Pat Demarais Assoc's v. Alexander Eastman Foundation*, 129 N.H. 89, 91, 523 A.2d 74, 75–76 (1986).

"'Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by others to so act.'" *Dugas v. Nashua Mfg. Co.*, 62 F. Supp. 846, 850

(D.N.H. 1945), *appeal dismissed*, 154 F.2d 655 (1st Cir. 1946) (citation omitted); *see Richardson v. Sibley*, 101 N.H. 377, 379, 143 A.2d 414, 416 (1958); *Mannone v. Whaland*, 118 N.H. 86, 88–89, 382 A.2d 918, 920 (1978); H. REUSCHLEIN AND W. GREGORY, AGENCY AND PARTNERSHIP § 12, at 31 (1979). The agency agreement may be oral, *Mannone supra*, as well as in writing, REUSCHLEIN AND GREGORY *supra*, or arise from the conduct of the parties, *Mannone supra* and *Richardson supra*.

■ The exclusive listing agreement between Hicks and Fletcher terminated on August 9, 1983. The record demonstrates, however, that Hicks and Fletcher agreed that Hicks would continue to represent Fletcher in the sale of the property. On August 23, 1983, Hicks wrote a letter, on Norwood Group stationery, in which he stated, "I shall continue to market the mill as requested and keep you posted on the progress with Mr. Jack E. Chin of Madison Paper Industries, Madison, Me." In addition, Hicks testified that he continued to discuss the sale of the property with individuals who had expressed interest before the exclusive listing agreement had expired. A principal-agent relationship definitely existed between Fletcher and Hicks after the exclusive listing agreement expired, evidenced both by an agreement and by the conduct of the parties.

■ Having established that Hicks was still acting as a broker even after the termination of the listing agreement, we are now prepared to ascertain whether Hicks breached any of his duties under RSA 331-A:6-b, X. The first factual aspect of this case we address is Hicks' failure to obtain in writing the seller's consent to Hicks' financial interest in the purchase of the property. RSA 331-A:6-b, X expressly calls for the written consent of all parties for whom the broker acts when the broker acts on behalf of more than one party in a transaction. An intent to acquire an interest in listed property necessarily places a broker in the position to serve his own interests, or the interests of an investment entity in which he intends to participate. He must, therefore, as a matter of law, be regarded as representing himself or that entity, in addition to his client, with the result that paragraph X applies. Hicks' admitted intent to acquire a financial interest in the purchaser's enterprise presented a clear conflict of interest between his obligations to Fletcher and his own anticipated interest in Steere's enterprise. The existence of this dual interest required compliance with the requirements of RSA 331-A:6-b, X. The evidence is undisputed that Hicks did not obtain from Fletcher written consent to his dual agency status. As such, Hicks' failure to obtain the requisite consent

was a patent infraction of RSA 331-A:6-b, X. Consequently, we hold that the determination of the real estate commission that Hicks had not violated this provision was clearly erroneous.

The second area of contention centers around Hicks' participation in the purchaser's enterprise, and whether he complied with his disclosure obligations under RSA 331-A:6-b, XIV. In the hearing before the real estate commission, Hicks claimed that he informed Fletcher of his intention to invest a portion of his commission in the property shortly before Fletcher signed the purchase and sale agreement. Fletcher claimed that Hicks' disclosure occurred only shortly after she had signed the purchase and sale agreement. Since the timing of Hicks' disclosure is a disputed fact and since the real estate commission rendered no findings, we cannot determine at this time whether Hicks complied with his disclosure obligations regarding his investment interest at the time that the purchase and sale agreement was signed.

Another area of Hicks' potential disclosure obligations involves the fact that on May 1, 1985, less than a month after the formation of the purchase and sale agreement, Hicks and Steere submitted a letter, on Norwood Group stationery, and a prospectus to the New Hampshire Industrial Development Authority. In the letter to the development authority, Hicks and Steere referred to themselves as "principals" in the "Hicks-Steere partnership (a sub-chapter S Corporation or other Legal Entity to be formed by the principals)." The existence of this letter, and its contents, are not disputed by the parties. What is in dispute is whether Hicks rendered proper disclosure of his involvement with Walter Steere pursuant to RSA 331-A:6-b, XIV. Analysis of this issue depends in large part on determining whether the brokerage relationship terminated prior to the writing of this letter. Once an agency relationship ceases, a former agent may, in general, act freely for any other party without laboring under any disclosure require-ments. *Hardy v. Davis*, 223 Md. 229, 233–34, 164 A.2d 281, 283–84 (1960). An important caveat to the above rule, however, is that a former agent cannot use confidential information obtained during the course of the fiduciary relationship. RESTATEMENT (SECOND) OF AGENCY § 396 (1958).

The petitioner's brief argues that Hicks' fiduciary obligations extended beyond the signing of the purchase and sale agreement, and thus Hicks had a continuing obligation to disclose his involvement with Steere. The petitioner does not, however, support this proposition with any authority or discussion. Moreover, the petitionee's pleading does not address this issue at all. We have

already made clear our unwillingness to decide issues in the absence of full argumentation by the parties. *See Town of Goffstown v. Thibeault*, 129 N.H. 454, 461, 529 A.2d 930, 934–35 (1987). The impact of the signing of a purchase and sale agreement on the fiduciary relationship between the broker and seller is an issue of first impression in this jurisdiction, and we will not address this issue without briefing and argument by the parties involved.

A further infirmity in the instant case exists in the form of the factual inadequacy of the record regarding the purchase and sale agreement itself. The agreement contained a number of contingencies, and apparently the transaction did not close. Whether the parties were able to make any progress in satisfying the conditions of the sale is unclear. Again, we believe answers to the question in the form of findings of fact are necessary in order to respond to the legal issues posed by this case.

■ Consequently, we hold that, on the record before us, the real estate commission erred as a matter of law in concluding that Hicks was not guilty of violating RSA 331-A:6-b, X in failing to obtain the written consent of Fletcher to his dual agency capacity. We note, as far as Hicks' violation of RSA 331-A:6-b, X is concerned, that RSA 331-A:6-b permits the revocation or suspension of a broker's license for prohibited conduct. RSA 331-A:6-b. We thus remand to the real estate commission for its determination of the appropriate disciplinary measures to be imposed upon Hicks. The inadequacy of the record requires us to remand also the balance of this appeal to the real estate commission for findings of fact and rulings of law regarding the issues raised in the complaint filed by the petitioner.

*Reversed and remanded.*

All concurred.